Peter G. Bertling (SBN 131602)
Bertling Law Group
21 East Canon Perdido Street, Suite 204B
Santa Barbara, CA 93101
Telephone: 805-879-7558
Facsimile: 805-869-1597
peter@bertlinglawgroup.com

Attorneys for Plaintiff
LARRY D. WALKER

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY D. WALKER,<br><br>              Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br><br>              Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES** |

COMES NOW, Plaintiff LARRY D. WALKER, by and through his counsel, and state as follows for his Complaint against Defendant UNITED STATES OF AMERICA:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction under 28 U.S.C. §1346(b) because Plaintiff's claim is a Federal Tort Claim pursuant to 28 U.S.C. §2671(b), et seq.

2. Venue is proper in this judicial district pursuant to 28 U.S.C.§1402 (b) and 32 CFR §750.32 because it is where the Defendant's negligence occurred.

## THE PARTIES

3. Larry D. Walker ("Mr. Walker") is a United States Army Veteran who was entitled to medical care and treatment at the VA Southern California Health Care System, primarily the Long Beach VA and its affiliated outpatient care centers. At all relevant times mentioned herein, Mr. Walker was a resident of Long Beach, California.

4. At all relevant times, Defendant UNITED STATES OF AMERICA ("United States") is a governmental entity. During the relevant period, the United States, through the VA Southern California Health Care System and Long Beach VA, both Federally Qualified Health Centers, was in possession and control of Long Beach VA, a comprehensive healthcare organization, serving the primary medical and behavioral health needs of Veterans. The United States has waived sovereign immunity as to Mr. Walker's tort claims against the VA Southern California Health Care System and Long Beach VA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On or about May 12, 2021, Mr. Walker submitted an SF95 Administrative Tort Claim to the U.S. Department of Veterans Affairs ("Department"), as required by 28 U.S.C. §§2401(b) and 2675(a). On June 8, 2022, the Department notified Mr. Walker his tort claim was denied.

6. Mr. Walker subsequently requested that the Department reconsider their denial of his FTCA claim and on September 8, 2022, the Department notified Mr. Walker that his request for reconsideration was denied. As such, Mr. Walker has exhausted his administrative remedies as required by 28 U.S.C. §2675(a).

## ALLEGATIONS

7. This is a medical malpractice action based on the failure of the providers at the Long Beach Veterans Affairs Medical Center ("LB VAMC") to diagnose Mr. Walker's thymoma and thymic cancer in a timely fashion. A thymoma is a tumor that develops in the thymus gland, an organ in the upper chest that is part of the lymphatic system. The thymus produces white blood cells which the body uses to fight off infections.

8. On November 29, 2017, Mr. Walker underwent a chest x-ray at the LB VAMC for symptoms of a persistent cough. According to the radiology report, there was a "[m]inimal patchy opacity of the right upper lobe without focal consolidations. Findings may represent minimal early infectious process, and clinical follow-up is

advised. No definite lung nodules seen, **but CT would be more sensitive for detection**." (Emphasis added.)

9. Based on the findings and recommendations identified the November 29, 2017 chest x-ray report, a CT was performed on December 6, 2017. It was interpreted by radiologist Mark D. Chambers, M.D. ("Dr. Chambers") who noted: "The lungs are clear without evidence of nodules or infiltrates. No pleural effusion is identified."

10. More than two years later, On December 19, 2019, Mr. Walker underwent a CT of his thorax as part of a pre-surgical work up for treatment of his recently diagnosed renal cancer. The thorax contains various organs such as the heart, lungs, and thymus gland. The CT of Mr. Walker's thorax was compared to the chest CT that was performed more than two years earlier and interpreted by Dr. Chambers on December 6, 2017.

11. The December 19, 2019, CT of Mr. Walker's thorax showed a "[l]obular soft tissue density mass noted within the anterior mediastinum with interval increase in size compared to prior exam from 2017. . . . "

12. On February 27, 2020, the LB VAMC Tumor Board reviewed Mr. Walker's case and noted, "CT chest with multilobulated anterior mediastinal mass, **not seen but present on CT from 2017 and slowly enlarging, likely thymoma**." (Emphasis added.) On March 31, 2020, another Tumor Board evaluated the mediastinal mass and referred Mr. Walker for a thoracic surgery consult.

13. A follow-up thorax CT was performed on April 14, 2020, which showed "[l]obulated anterior mediastinal mass appears similar in size to December 2019 exam. . . . Focal area of tree-in-bud opacity in the lingular region with the largest nodule measuring 5 mm. This may be new since December 2019 CT." The same day, Mr. Walker met with thoracic surgeon Amir Abolhoda, M.D. ("Dr. Abolhoda") who noted the new 4 cm mediastinal tumor was "enlarging in size since first imaging detection in Dec 2017."

14. On April 28, 2020, Mr. Walker underwent a right robotic assisted resection of the anterior mediastinal tumor and partial thymectomy. According to the surgical

pathology report, the tumor was a 6.3 x 4.5 x 1.5 cm, Type 82 thymoma. In the discharge summary following this procedure, it was noted that "***[o]n review of prior imaging, anterior mediastinal mass present as early as 2017 on CT chest, not remarked in imaging report.***" (Emphasis added.)

15. On August 5, 2020, a follow up thorax CT showed "a slightly enlarged right internal mammary chain lymph node measuring 11 mm, which is suspicious for malignant involvement . . . ."

16. On November 3, 2020, at a surgery clinic follow up visit, it was noted "Recent imaging has demonstrated a slightly enlarged 11 mm right internal mammary lymph node which thoracic surgery is continuing to monitor. . . . Patient is following up for chronic left chest pain which he states has been present since surgery. Patient describes the pain as a tearing pain. He intermittently gets the pain throughout the day." On November 25, 2020, it was again noted Mr. Walker suffered from constant ripping chest wall pain following his tumor resection. Mr. Walker continues to suffer from this chronic and excruciating pain.

17. The LB VAMC healthcare providers' deviations from the standard of care include, but are not limited to, the following:

    a. negligent interpretation of the December 6, 2017, chest CT that failed to identify the presence of a thymic tumor;

    b. negligent delay in the diagnosis and treatment of Mr. Walker's thymic cancer;

    c. failure to provide Mr. Walker with an informed consent regarding the benefits, risks, and alternatives procedures for a robotic assisted thymoma resection;

    d. negligent performance of the thymectomy on or about April 28, 2020, and

    e. other deviations from the standard of care which may be developed through further investigation, discovery, and expert review.

Had LB VAMC personnel complied with the applicable standard of care in providing medical care and treatment to Mr. Walker, it is more likely than not that his thymic cancer would have been diagnosed substantially earlier; he would have had fewer surgical complications; and he would have experienced significantly less pain, suffering, and emotional distress.

## I.
## FIRST CAUSE OF ACTION
## MEDICAL MALPRACTICE

18. Mr. Walker repeats and herein realleges the allegations contained in paragraphs 1 through 17 of this Complaint.

19. As a proximate cause of Defendant's negligence, Mr. Walker has suffered emotional distress, fright, physical trauma, physical pain, and an exacerbation of his pre-existing PTSD.

20. As a further, direct, and proximate cause of Defendant's negligence, Mr. Walker has incurred and will in the future incur medical and sundry expenses in the examination, care, and treatment of his injuries. The amount of Mr. Walker's past and future medical expenses will be proved at trial.

21. As a further, direct, and proximate cause of Defendant's negligence, Mr. Walker has and will in the future incur additional special damages, in amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Walker prays for judgment in his favor against Defendant as follows:

1. General damages according to proof;
2. Special damages according to proof;

///
///
///

3. Costs of suit as allowed by law; and

4. Such other and further relief as the Court deems proper.

                                          Respectfully submitted,

DATED: March 7, 2023        BERTLING LAW GROUP

                                          */s/ Peter G. Bertling*
                                          Peter G. Bertling
                                          Attorneys for Plaintiff
                                          LARRY D. WALKER